The deed from Thomas and Sarah Brown to George Lucas, dated 25 March, 1779, did not pass the fee-simple estate of Sarah Brown; she never was privately examined by any of those modes and ways pointed out by the Legislature, and without such an examination we are ignorant whether coercion or undue influence was exercised by her husband or not. She being a feme covert at the time the deed was executed, the law declares it void without such an examination.
Had the Legislature any right or power to take the lands without the consent of the lessors of the plaintiff, in whom the fee simple vested, and, without compensation rendered, give them to Gen. Thomas Brown and his heirs? or, in other words, is the act of the Assembly, passed in 1788, (420) confirming the title of General Brown, of any force or effect? I am of opinion the act is a nullity, and does not affect the rights of the lessors of the plaintiff. The Constitution declares that the legislative, executive and supreme judicial powers of Government ought to be forever separate and distinct from each other. The transfer of property from one individual, who is the owner, to another individual, is ajudicial and not a legislative act. When the Legislature presumes to touchprivate property for any other than public purposes, and then only in case of necessity, and rendering full compensation, it will behoove the Judiciary to check its eccentric course by refusing to give any effect to such acts. Yes, let them remain as dead letters on the statute-book. Our oath forbids us to execute them, as they infringe upon the principles of the Constitution. Miserable would be the condition of the people if the judiciary was bound to carry into execution every act of the Legislature, without regarding the paramount rule of the Constitution. This Government is founded on checks and balances. The Judiciary check the Legislature when it strays beyond its constitutional orbit, by refusing to enforce its acts. "The opinion of Sir Mathew Hale, that a statute is in the nature of a judgment, may be law in England, but in this State, where the Constitution has separated the legislative and judicial powers, courts can neither nibble at the legislative power, nor can the legislative stride over the judicial." In England "acts of this kind are carried on in both Houses with great deliberation and caution, particularly in the House of Lords. They are generally referred to two judges to examine and report the facts alleged, and to settle all technical forms. Nothing, also, is done without the consent expressly given of all parties in being and capable of consent, that have the remotest interest in the matter, unless such consent shall appear to be perversely and *Page 292 
without any reason withheld; and as before hinted, an equivalent in money or other estate is usually settled upon infants (421) or persons not in esse, or not of capacity to act for themselves, who are to be concluded by this act, and a general saving is constantly added at the close of the bill of the rights and interests of all persons whatsoever, except such whose consent is so given or purchased, and who are therein particularly named. Though it has been holden that if even such saving be omitted, the act shall bind none but the parties." 2 Blackstone Com., 345. Judge Blackston then adds: "A law thus made, though it binds all parties to the bill, is yet looked upon more as a private conveyance than as the solemn act of the Legislature." In this country, a variety of determinations by different judges, in different courts, has established the principle that the Legislature has not the power to take the lands of A and give them to B. Such a power is not within the definition of that prerogative affixed to sovereignty, and denominated, by writers on national law, the eminent domain. This prerogative of majesty is to be exercised only in case of necessity, and for the public safety. when the sovereign disposes of the property of an individual in case ofnecessity and for the public safety, the alienation will be valid; but justice demands that this individual be recompensed out of the public money, or if the treasury is not able to pay it, all the citizens are obliged to contribute to it. Vattel, Book 1, ch. 20, sec. 244.
It is by virtue of the eminent domain that highways are made through private grounds. Fortifications, lighthouses and other public edifices are constructed on the soil owned by individuals. Necessity demands these works; they are for the publicsafety, and the individual is compensated for his loss; but necessity can never demand that the lands of A shall be taken and given to B, nor can the public safety ever require it. It is immaterial to the State in which of its citizens the land is vested; but it is of primary importance that when vested it should be secured and the proprietor protected in the (422) enjoyment of it. Judge Patterson, in Vanhorner v. Dowanee, 2 Dallas, 310, says: "The Legislature has no authority to make an act divesting one citizen of his freehold
and vesting it in another, without a just compensation; it is inconsistent with the principles of reason, justice and moral rectitude; it is incompatible with the comfort, peace and happiness of mankind; it is contrary to the principles of social alliance in every free government, and lastly, it is both contrary to the letter and spirit of the Constitution. In short, it is what every one would think unreasonable and unjust in his own *Page 293 
case." Judge Chase, in Calder v. Bull, 3 Dallas, 394, observes: "It is not to be presumed that the Federal or State Legislature will pass laws to deprive citizens of rights vested in them by existing laws, unless for the benefit of the whole community, and on making full compensation." ChiefJustice Parsons, in delivering the opinion of the Court in Walls v.Stetson, 2 Mass. 146, says, "that we are also satisfied that the rights legally vested in this or any other corporation cannot be controlled or destroyed by any subsequent statute." Chief Justice Marshall, in Fletcherv. Peck, 6 Cranche, 132, 143, said: "The Legislature of Georgia, in their session of 1796, had no power to divest the titles of the Yazoo lands out of those grantees to which the Legislature in its session of 1795 had conveyed." We all know that Georgia repealed or attempted to repeal the law of 1795. The records were erased or burnt. Congress fretted and stormed, but the grantees held the land.
In Osborn v. Huger, 1 Bay, 197, Judge Burke said, "he should not be for construing a law so as to divest a right; and that a retrospective law in that case would be against the Constitution of the State."
Chief Justice Kent is of the same opinion, Dash v. VanKluck, 7 Johns., 507. Chancellor Lansing, in delivering his opinion in the case of Catlin v. Jackson, 8 Johns., 557, remarking on the passage in Blackstone's Commentaries relative to the manner of passing private acts in England, (423) observes: "If in Great Britain, where so many precautionary measures are taken to preserve the interest of strangers, private acts are restrained to the parties only who are evidenced to be such, by consent to them, either in person or by those who legally manage their concerns for them; and if when the suggestions on which the act is passed are proved fraudulent, a court of chancery will relieve against them, which is there well settled, the general practice which obtains here with respect to the passing such acts generally on the bare suggestion of the applicants, affords additional and very cogent reasons against relaxing
such restraints; and it can be scarcely necessary to add, to divest an interest to a stranger to it is contrary to the clearest dictates of justice and repugnant to the Constitution." The same doctrine has been held by this Court: University v. Foy, 3 N.C. 310, 374; Allen v. Peden,4 N.C. 442. No principle in the law appears to be better supported by authority than this. The Legislature had no right or power to divest the lessors of the plaintiff of their title to the lands in controversy, and vest them in General Brown and his heirs. The act of 1788 shall not prevent the recovery of the plaintiff. *Page 294 
The act of limitations does not bar the entry of the plaintiff. ThomasBrown was tenant by the curtesy of these lands. On 4 June, 1796, by deed of bargain and sale, he conveyed in fee to Stephen Barfield. But as he was seized and possessed only of a life estate, the statute of uses executed and transferred that only to the bargainee. The conveying a greater estate in land than a person has by any of those modes of conveyancing which have sprung out of the statute of uses, does not amount to a forfeiture; but it shall pass such estate or interest which the bargainor had or was seized and possessed of, and no more. 4 Com. Dig. "Forfeiture" A, 3.
"A right of entry in the remainderman cannot exist during the existence of the particular estate, and the laches of a (424) tenant for life will not affect the party. An entry to avoid the statute must be an entry for the purpose of taking possession, and such an entry be made during the existence of a life estate. 4 Johns., 402; 1 Burr., 120, 126; 2 Salk., 422; 7 East, 311, 312, 319, 321.
The plaintiff had no right to enter before the death of Thomas Brown, and he died 22 November, 1814.
BY THE COURT.
Judgment for the plaintiff.
Cited: Hoke v. Henderson, 15 N.C. 16; Lowe v. Harris, 112 N.C. 481;Miller v. Alexander, 122 N.C. 720; Wilson v. Jordan, 124 N.C. 715;Daniels v. Homer, 139 N.C. 240, 242, 270.