*UNITED STATES & AL.* vs. *HAWKINS' HEIRS.*

APPEAL from the court of probates of the parish and city of New-Orleans.

U. STATES & AL.
*vs.*
HAWKINS'
HEIRS.

PORTER, J., delivered the opinion of the court. The proceeds of the property left by the deceased not being sufficient to pay all the creditors, the tutrix of the minor heirs filed a tableau of distribution, in which she affixed a certain rank to several mortgage and privilege creditors. Opposition was made to the homologation of the tableau, and after hearing the parties, the court of probates confirmed it in part, and modified it in respect to some of the creditors by whom it had been opposed.

From that decree this appeal was taken.

The parties now contesting before the court, are: 1st. Elliot, who by virtue of a judgment and execution issued thereon, levied on property of the estate during the life of Hawkins, claims to be paid in preference to all others. 2d. The United States, who assert a right to priority of payment out of the funds in the hands of the administrator of the estate, for a balance due by the deceased as navy agent.

A judgment against two, without stating the parties are condemned *in solido*, makes each responsible for his *virile* share.

Judgments are presumed to follow the obligation they enforce. But when the prayer in the petition does not follow the obligation, this presumption does not exist.

Bail are not responsible *in solido*, unless in case of insolvency of one of them, or unless when sued, they fail to claim the benefit of division.

The service under a writ of *fieri facias* does not divest the debtor of the property seized.

A seizure of land gives no preference over other creditors.

The U. States have not a preference in an in-

East'n. District.
*March*, 1826.

U.States&al.
*vs.*
Hawkins'
heirs.

solvent  estate
above the mort-
gage creditor.

3d. Wilkinson, to whom Hawkins gave bond, secured by special mortgage, on part of the property of the deceased.

As Elliot insists his claim is higher than all others, we will first examine it.

The judgment in which it originates, was rendered against the deceased and one Hector M'Lean who were bail for Beale, against whom Elliot had commenced an action, and it is in the following words: " Judgment to be entered in favor of the petitioner against the defendants as bail aforesaid."

Under this decree a *fieri facias* was taken out on the 17th June, 1822, on which there is the following endorsement: " Credit this writ with one half of the judgment and costs paid to the plaintiffs' attorney, and for which satisfaction is entered on record the 18th March, 1822."

On the judgment docket, the following receipt is entered, " Received satisfaction of one half of this judgment and costs of J. H. Hawkins, Esq."          J. A. Maybin."

An alias *fieri facias* was subsequently issued, on which the sheriff returned " seized the house and lot occupied by the defendant, the sale of which was stayed by an injunction from the court issuing the writ."

East'n. District.
*March*, 1826.

U.STATES&AL.
*vs.*
HAWKINS'
HEIRS.

A *pluries fieri facias* was afterwards taken, on which there is the following return; "stayed by order of the court."

On these facts the opposing creditors contend, that the judgment against Hawkins & M'Lean was not *in solido.*

2d. That, if it was, the solidity has been renounced.

3. That the seizure gives no preference over previous mortgages, nor above that claimed by the United States.

The bail bond on which this judgment was rendered, makes express mention, the parties signing it, were bound jointly and severally. The judgment is against them as bail, but does not say they are to pay the plaintiff jointly or severally.

It is a principle of our law, and a familiar one, that an obligation *in solido* cannot be presumed; that it must be expressed. The obligation imposed by a judgment is understood to be subject to the same rule, and a decree that two should pay a sum of money, makes each responsible for his *virile* share.

But in opposition to this presumption, it is contended that judgments are always presumed

East'n. District.
*March*, 1826.

U.States&al.
*vs.*
Hawkins'
heirs.
to follow the obligations they enforce; and the parties in this instance being bound *in solido*, the decree of the court must be understood to condemn them to do that which they had engaged to do.

What force this argument would have, had the petition required they should be condemned jointly and severally we need not say. But when it merely asks for judgment against both, the presumption relied on does not exist. The Roman law is express on this point, and Pothier sanctions the same doctrine.— *Dig.* 17, *tit.* 1, *l.* 59.    *Pothier Contrat de Mandat, no.* 83.

But another question remains to be solved, before this point is disposed of. The words of the petition, and the judgment it is contended, show the demand to be *in solido*, and the decree to be according to the prayer of the petition.

Not a word is said in the rule taken against the defendants, respecting the bail bond, or the terms in which it is drawn. The defendants are called on to show cause why judgment should not be given against them as *bail*.

The answer contests their responsibility *as charged*, and the judgment condemns them *as*

East'n. District.
*March*, 1826.

U. STATES & AL.
*vs.*
HAWKINS'
HEIRS.

*bail* to pay the plaintiff the sum demanded in the petition.

The responsibility contended for, must result then from the obligations imposed upon them *as bail.* Now, as such they were not responsible in the first instance to this extent. There is an express provision in our late code, that where there are several sureties, each is individually liable for the whole debt, *in case of insolvency of any one of them.* The special statutes which provide for the manner of taking bail bonds, make no exception to this rule. *Civil Code,* 430, *art.* 12 ; 1 *Mart. Dig.* 474, 475, 476.

If this article stood alone, there can be little doubt the creditor would be obliged to show the insolvency, before he could recover the whole debt from one of the sureties, because it is only on that event he is responsible. But the next section declares " that any of them may however, demand, that the creditor should divide his action, by reducing his demand to the amount of the share and portion due by each surety, unless they have renounced the benefit of division." *Civil Code* n. 430, *art.* 12.

This confusion has arisen from copying the

East'n. District.
*March*, 1826.

U.States &al.
*vs.*
Hawkins'
Heirs.

second section literally from the Napoleon Code, and changing the first. It is certainly no easy matter to give a satisfactory construction to such enactments. The first declares the surety only responsible for the whole amount on a certain event. The next provides that he may nevertheless claim the benefit of division if sued for the whole.; that is, that he may exercise a right which the preceding section would seem to have rendered useless. *Civil Code*, 430, *art.* 12 ; *Code Nap.*, 2205, 2206.

And yet this provision must have been introduced for some purpose. The soundest rules of construction require us to presume so, and so to construe laws, that no part of them if possible should be vain, and without effect. We conclude, therefore, it was the intention of the legislature to make the co-surety responsible in two cases for the whole amount. 1st. If any of those bound with him were insolvent; and 2d. If, when sued, although that event had not taken place, he failed to claim the benefit of division. Any other construction would leave the second section without effect.

The division was not demanded here, nor

could it have been successfully, for the obligation made the sureties responsible *in solido*. We therefore think the judgment bound each for the whole amount.

East'n. District.
*March*, 1826.

U. STATES&AL.
*vs.*
HAWKINS'
HEIRS.

The second question is free from any difficulty. The creditor is not deemed to remit the debt *in solido* to the debtor when he receives from him a sum equal to the portion due by him, unless the receipt specifies, it is for his part. *Civil Code*, 28 v., art. 3.

We have now to examine the effect of the lien created by the seizure made on the house and lot, and the operation of the execution on the personal property not seized.

At common law the *seizure* under a *fieri facias* divested the debtor of his property, but the mere delivery of the writ to the sheriff did not. Supposing us governed by that system, the right to property in this instance would not be changed, for no seizure took place. But the effect which our writs of execution should have, is prescribed by the positive laws of the state.

These laws declare that the writ of *fieri facias* shall, from the time of the delivery to the sheriff, bind and be a lien on all personal property of the person against whom the same

shall be directed into whosoever hands the same may come.

These expressions *ex vi terminorum* exclude the idea, that the property is transferred by seizure. If *any part* of it was, *the whole* would not be made subject to the lien, as property of the debtor. Again, according to another provision of the same act, the purchaser at sheriff's sale acquires the right, title, and interest which the debtor had to the thing sold, at the time the writ is delivered to the sheriff. Now, it cannot be presumed, the legislature intended to divest the debtor of the title which the purchaser was to acquire. Such an enactment would be worse than useless. Nothing found in the Spanish law, or the writers who comment on it, supports the idea, that *seizure* makes any change in the property. By a law of the *Recopilacion*, goods taken in execution were directed to be sequestered, inventoried, and deposited with some responsible person, and the *adjudication* transferred the property of the debtor to the purchaser. *Curia Phillipica, p.* 2; *Juicio Executivo,* §. 16, *no.* 19; *Nova Recop.* 4, 22, 7.

As to the land which was actually seized, the statute provides, that from the time the

East'n District.
*March,* 1826.

U. STATES &AL.
*vs.*
HAWKINS'
HEIRS.

judgment is docketed " all real property and slaves within the territory, belonging to the person against whom said judgment shall be so seized and docketed, shall be bound and liable for the said debt and costs, in whosoever hands they may have come for one year;" and by a subsequent section it is provided, " that *the sale by the sheriff*, shall vest in the purchaser all the right, title, and interest of the person against whom the execution issued at the time of docketing." The observations already made in regard to moveable property, apply with equal, and perhaps additional force to these provisions, and it appears to us, exclude the idea of the seizure making any change in the title. But the principle contended for, does not apply, even in countries governed by common law, to immoveable estate, and the distinction grows out of the difference between that species of property and moveables; the one passing *by delivery*, the other *by deed.* 4 *Mass.* 402; 8 *John.* 548; 2 *Martin's Digest.* 170, 172.

We are therefore of opinion that the seizure of the land affords no preference over other creditors; nor did the docketing of the judgment give any over the United States: for if that act gave a mortgage, it could have no

East'n. District.
*March*, 1826.

U.States& al.
*vs.*
Hawkins'
heirs.

effect against third parties, as by a provision of the code, posterior in time, it is declared, that judicial mortgages cannot operate against third parties, except from the day they are registered in the office of the register of mortgages. If it conferred a lien inferior to a mortgage, the United States have the preference over it on the principles already decided by the supreme court of the union. *Civil Code*, 454, *art.* 14.

We proceed therefore to examine the claim of the United States. It is founded on an act of congress, which gives a preference to the general government, in the funds of an insolvent or deceased person's estate. *Ingersoll's Ab.* (ed. 1825) 561.

A decision of the supreme court of the United States has been referred to in argument, in which it is declared, that the claim of the government yields to that of a mortgagee creditor. But on the other side it is contended, that though such is the case as it regards mortgages at common law, it is different in respect to ours; because, in the former the debtor is divested of the title, whereas in this state it remains in him, and the reasoning used by the court, in the decision of that case, is offered in

support of this distinction. *Thelluson* vs. *Smith*,
2 *Wheaton*, 426.

There is little or no difference *in the effect* of the common law mortgage and our hypothecation, though the form of the instruments by which they are created is not the same, and the mode of enforcing them different. Both are considered by the debtor, and the creditor, as securities for the payment of a debt or obligation, or the discharge of some duty; and though, according to the doctrines of the English jurisprudence, the *law* views them in one light, and *equity* in another; yet both mortgagor and mortgagee know, that the legal consequences flowing from an act, which in form, is a conditional sale, are controlled by the operation of other principles, that are as binding on the parties as if the same rules were prescribed by an act of parliament. *Douglas*, 600, 1; *Powell on Mortgages*, 220; *Civil Code*, 452, 1.

The attempt therefore to make the mortgagee creditor in this state, yield to the claim of the United States, is founded on distinctions purely technical. But when our mortgage is closely examined, it will not be found to differ so materially from that of the common law, as

East'n. District.
*March*, 1826.

U. STATES & AL.
*vs.*
HAWKINS'
HEIRS.

on the first consideration it would appear to do.

But before we go into the examination, it is proper we should state, that we disclaim *all intention* of putting a different construction on the statute to that given by the supreme court; for as the question arises on an act of Congress, it is our duty to follow the exposition which they have given of it.   As that tribunal said, in a very late case, " the judicial department of every government, where such department exists, is the appropriate organ for construing the legislative acts of that government. Hence the construction given by this court to the constitution and laws of the United States, is received by all as the true construction; and hence the construction given by the courts of the several states, to the legislative acts of these states, is received by us as true, unless they come in conflict with the constitution, laws, and treaties of the United States."    10 *Wheaton*, 160; see  also  16 *John.* 248; 17 *ibid*, 108.

That court has decided that the claim of the United States should be postponed to the mortgagee creditor, and that it had preference over the judgment creditor claiming a lien. It

East'n District.
*March*, 1826.

U.STATES&AL.
*vs.*
HAWKINS'
HEIRS.

has not however, as yet decided the question, whether a special or qualified property in part of the debtor's estate, would enable the creditor to be paid before the government. The question, therefore, is still open to us. The distinguished jurist who argued on behalf of the United States, in the case against Fisher's assignees, expressly disclaimed all intention of contending that the priority given by Statute would operate against the pawnee, and it is clear that *he* has nothing but a special property in the thing pawned. Even if the question had been decided adversely to such right, in property under contracts at common law, it would be undecided in relation to a claim presented under our system of jurisprudence: for our rules are as different on this head as can be easily supposed. In the former, for example, though the object of the deed of mortgage is to secure the payment of a debt, and its effect nothing more, unless the mortgagor chooses, the mortgagee is considered *in law* as the real owner, because the *form* of the instrument confers it. In the latter, as will be hereafter clearly shown, though the form of the instrument does not transfer the title, yet from technical rules growing out of

East'n. District.
*March*, 1826.

U. STATES & AL.
*vs.*
HAWKIN'S
HEIRS.

the contract, as first understood and recognised in the civil law, the *right* of the mortgagee in the thing mortgaged, is considered to this day *the same as that of the vendee.* Whether this be an anomaly in our jurisprudence, or not, is a matter of little consequence; for if the effect of our hypothecation be as just stated, the mortgagee must have the same preference here as in the common law states, according to the principles already established by the supreme court of the United States. 2 *Cranch*, 358; 3 *ibid*, 73 ; *Wheaton*, 426.

According to the early doctrines of the Roman law, the right of the creditor in the thing hypothecated was considered to partake so much of the nature of a complete acquisition of title and property, that it could not be obtained by a naked agreement. Tradition was necessary, on the maxim, *non nudis conventionibus, sed traditionibus. Pothier Traité de l'Hypotheque, cap.* 1, *sec.* 1, *art.* 1, § 1.

An edict of the prætor subsequently permitted hypothecation to be formed by convention, without possession following the act, but no other change was made. The character originally belonging to the contract still attached to it, and the right conveyed and

East'n. District.
*March*, 1826.

U. STATES & AL
*vs.*
HAWKINS'
HEIRS.

acquired, was styled *jus in re*; *Pothier loco citato.*

The principle, as far as we can learn, has been adopted and maintained by every nation in Europe, whose jurisprudence is drawn from the same source as ours.

*Basnage*, in his *Taités des Hypothèques, ch.* 6, defines a mortgage, " *jus reale quod fundum sequitur, adversus quemcumque possessorem.*"

*Neguzantius*, a distinguished Italian jurist, gives the following definition, the accuracy of which has been applauded by other writers who treat on this contract. "*Et quia hypotheca constituitur desuper rebus, ideo dicitur, jus in re, seu jus reale, vel actio realis quia per illam non obligatur persona debitoris, sed res, et sequitur fundum, et datur contra possessionem.*" *Part.* 1, *no.* 3.

Of the same opinion is Heinneceus, " *Quod ad reliqua attinet, jus in re, ex pignore et hypotheca idem nascitur. Heinneceus, Recit. lib.* 3, *tit.* 15, *no.* 822.

The French jurists, who have commented on the Napoleon code, from which the articles in ours on the same subject do not materially differ, approve of these definitions, and expressly state that a mortgage is a real right. *jus in re, Civil Code,* 452 *and* 3 ; *Code*

East'n. District.
*March* 1826.

U. STATES&AL.
*vs.*
HAWKINS'
HEIRS.

*Nap.*, 2114; *Grenier, Traité des Hypothèques, part* 1, *cap.* 1, *no.* 4; *Persil Régime Hypothécaire, cap.* 3, 2414.

The Spanish writers recognised the same distinction, and the hypothecary action is classed among those denominated *real*. *Febrero, p.* 1, *cap.* 4, *sec.* 4, *no.* 70. To the same effect is Heinneceus, *lib.* 2, *tit.* 1, *no.* 334.

Again, according to the writer last mentioned, *ubi jus mihi est in re, ibi res mihi devincta est; ubi jus ad rem persona obligata, no.* 333.

And, in accordance with all these authorities is *Pothier*, who, in his treatise *Du Droit du Domaine de Propriété*, tells us, that the *jus in re* is the right which we have in a thing, by which it belongs to us, at least for certain purposes, (*au moins a certains égards*) *chap.* 1, *no.* 1. And he classes among those who have the *jus in re* the vendee, and the mortgagee creditor. *Pothier, loco citato, no.* 2.

From these authorities we think the conclusion is irresistable, that according to the techical rules of our law, the mortgagee has a right to the property mortgaged.

And it was no doubt from this consideration, that neither in imperial Rome, nor in France, nor in Spain, did the government

East'n. District.
*March*, 1826.

U.States &al.
*vs.*
Hawkins'
Heirs.

claim for debts due to it, a preference over the creditor who asserted a right in virtue of *a conventional mortgage,* unless the act embraced future as well as present property, in which case the *Fisc* was preferred, on that acquired subsequent to the date of the mortgage. But the right even to that extent was a question strongly controverted among the Roman jurists.—*Curia Phill. Commercio Terrestre, lib.* 2, *cap.* 12 ; *Verbo Prelacion, nos.* 29 & 30. *Febrero, p.* 2, *lib.* 3, *cap.* 3, § 2, *nos.* 115, 116, & 117. *Domat. lib.* 3, *tit.* 1. § 4, *nos.* 21 & 22. *Dig. lib.* 20, *tit.* 4, *law* 21. *Ibid lib.* 49, *tit.* 14 ; *law* 28.

If then according to the technical rules of our jurisprudence, the mortgagee creditor is considered to use the language of Potheir, *as the owner for certain purposes of the thing mortgaged,* we are unable to perceive any difference between his claims when opposed to the United States, and those of a person holding a mortgage at common law.

It was contended on the argument, that the judicial mortgage of our laws differed in no respect from that by convention, and that if the mortgage in this case had been of the former kind we should have precisely the case

East'n. District.
*March* 1826.

U.STATES & AL
*vs.*
HAWKINS'
HEIRS.

of *Thelluson* vs. *Smith*, where a judgment in Pennsylvania which gave a lien was postponed to the claim of the United States.   To this we answer  that, it is true, the judicial mortgage of our law, does not differ from the conventional, except in the manner in which it is formed ; but both our conventional and judicial mortgage, differ from the lien of the common law, in the rights which they confer in the property.   The latter gives no *jus in re*, it is an  obligation, tie or claim, annexed to, or attaching upon the  property.—*Jacobs' Law Dict.  vol.* 4, *verbo lien* 159.

If to this reasoning it be still objected that the effects of a lien given by a judgment at common law, and the effect of our judicial mortgage are the same, and that the distinction  drawn between them is refined and artificial; the reply again is, that the mortgage at common law, our hypothecation and the lien conferred by judgment,  are  nearly  alike in their effects.   But if the supreme court of the United States felt itself bound to give the mortgage at common law a preference in consequence *of the form in which it is made,* we do not feel authorised to shut our eyes to those technical rules, which make the mortgagee

in the view of our law, owner for certain purposes, of the thing mortgaged.

East'n. District.
*March*, 1826.

U. STATES&AL.
*vs.*
HAWKINS'
HEIRS.

It is therefore ordered, adjudged and decreed, that the judgment of the court of probates be affirmed with costs.

*Eustis* and *Strawbridge* for the United States, *Preston* for Elliot, and *Ripley* for Hawkins' heirs.